# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

VANDERBILT HOOKS,

     Plaintiff,

v.                                                    Case No.  5:18-cv-114-RH/MJF

H. SAPP, *et al.*,

     Defendants.

_____/

## **REPORT AND RECOMMENDATION**

     Defendants Herman Sapp and Markevar Hunter have moved to dismiss Count Three of Plaintiff Vanderbilt Hooks's second amended complaint and any claims that seek damages against these defendants in their official capacities. (Docs. 70, 73).[1] Sapp and Hunter supplemented their motion to dismiss (Doc. 92), and Hooks responded. (Doc. 93). The undersigned recommends that Defendants' motion to dismiss be granted.[2]

_____

[1] On October 11, 2019, Defendant Sapp filed his motion to dismiss. (Doc. 70). On October 22, 2019, Defendant Hunter filed a "Notice of Intent to Adopt Defendant Sapp's Motion to Dismiss State Law Claims." (Doc. 73).

[2] The case was referred to the undersigned to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

# I.    Background

Solely for purposes of Defendants' motion to dismiss, the undersigned presumes that the facts stated in Hooks's second amended complaint are true and draws all reasonable inferences in favor of Hooks's claims. Hooks is an inmate of the Florida Department of Corrections ("FDC"), and Sapp and Hunter were correctional officers. (Doc. 67 at 5-8).

## A.    Allegations Regarding Herman Sapp

Hooks alleges that, on August 13, 2015, at approximately 5:15 p.m., Hooks informed Sapp that fellow inmate Gregory Thomas ("Thomas") threatened Hooks with serious bodily harm. (Doc. 67 at 5, 6). Additionally, Hooks informed Sapp that "inmate Thomas is known for his past violence toward other inmates and criminal history." (*Id.* at 6). Hooks told Sapp that he feared Thomas and asked to be moved to a different housing unit away from Thomas. (*Id.*).

Hooks states that Sapp's "attitude" indicated a "lack of concern" and that Sapp "brushed the matter off." (*Id.*). Hooks contends that, in response to his concerns, Sapp instructed him to "write the housing Sergeant an inmate request to move." (*Id.*). Hooks alleges that it "is common knowledge it takes five to ten days for an inmate request to be answered." (Doc. 67 at 6). Sapp allegedly "ignored the situation and refused to act to investigate, defuse the situation or provide protection." (*Id.*). Less than two hours later, Thomas repeatedly stabbed Hooks. (*Id.*).

B.    **Allegations Regarding Markevar Hunter**

Hooks alleges that Hunter arrived at his cell after the attack to conduct an investigation of the incident. (*Id.* at 8). Hooks alleges that Hunter wrote in the incident report that Hooks "offered no response" to Hunter's inquiries. (*Id.*). Hooks asserts that he offered no response because he was "in shock from the stabbing," and was bleeding, was "in extreme pain, fearing further attack, and afraid of dying." (Doc. 67 at 8). Hooks contends that this demonstrates Hunter's "wanton disregard for Mr. Hooks's life and deliberate indifference toward Mr. Hooks's needs." (*Id.*). Hooks also alleges that he was escorted to "Medical" by an unnamed individual where healthcare professionals treated his injuries. (*Id.* at 8-9).

## II.    Procedural History

On April 30, 2018, Hooks initiated this action pursuant to 42 U.S.C. § 1983. In his second amended complaint, Hooks asserts four claims, including violations of the Eighth and Fourteenth Amendments to the United States Constitution. Sapp and Hunter have moved to dismiss one of Hooks's claims: Count Three, "Violation of Negligence – As to All Defendants." (Docs. 70, 73). They also have moved to dismiss Hooks's claim for damages under section 1983 in their official capacity.

## III.    Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss

for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010). "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Ashcroft*, 556 U.S. at 678).

When evaluating a complaint, a court will accept all well-pleaded factual allegations as true and will draw reasonable inferences from those facts in the light most favorable to the plaintiff. *See* Fed. R. Civ. P. 12(b)(6); *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997); *see Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

## IV.    Discussion

### A.    Count Three: Hooks's Negligence Claims against Defendants in their Individual Capacities

Sapp and Hunter first argue that the District Court should dismiss Count Three because, in their individual capacities, under Section 768.28(9)(a) of the Florida Statutes, they are immune from liability. (Doc. 70 at 3; Doc. 92).

State law governs the applicability of immunity to state law claims. *Griesel v. Hamlin*, 963 F.2d 338, 340 (11th Cir. 1992) (per curiam); *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998) (per curiam). Section 768.28(9)(a), Florida Statutes in pertinent part reads:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held <u>personally liable</u> in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, <u>unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.</u>

Fla. Stat. § 768.28(9)(a) (emphasis added).

"This statute plainly provides immunity from suit." *White v. Mesa*, ___ F. App'x ___, 2020 WL 2857667, at *3 (11th Cir. 2020). This immunity statute "generally protects government officials from individual liability for damages." *Thompson v. Douds*, 852 So. 2d 299, 309 (Fla. 2d DCA 2003). Under this provision, a defendant "cannot be held liable for acts committed within the scope of his employment unless he 'acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Huberski v. Bufano*, 728 F. App'x 903, 909 (11th Cir. 2018) (quoting Fla. Stat. § 768.28(9)(a)); *Parker v. Am. Traffic Solutions, Inc.*, 835 F.3d 1363, 1369 (11th Cir. 2016); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1330 (11th Cir. 2015).

For purposes of section 768.28(9)(a), "Florida courts equate bad faith with the actual malice standard." *Gurrera v. Palm Beach Cty. Sheriff's Office*, 657 F. App'x 886, 892 (11th Cir. 2016) (citing *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998)); *Ford v. Rowland*, 562 So. 2d 731, 734 (Fla. 5th DCA 1990) (explaining actual malice in the libel context as "knowing it was false or with reckless disregard for its truth or falsity"). "The phrase 'malicious purpose,' as used in section 768.28(9)(a), has been interpreted as meaning the conduct was committed with 'ill will, hatred spite, [or] an evil intent' . . . [o]r perhaps stated more simply, 'the subjective intent to do wrong.'" *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020) (quoting *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1343, 1345 (M.D. Fla. 2017)).

The phrase "'wanton and willful disregard of human rights [or] safety,' as used in section 768.28(9)(a), has been interpreted as 'conduct much more reprehensible and unacceptable than mere intentional conduct,' . . . and 'conduct that is worse than gross negligence.'" *Peterson*, 290 So. 3d at 109 (quoting *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987); *Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 593 (Fla. 2d DCA 2003)). The term "wanton" as used in section 768.28(9)(a)'s phrase "wanton and willful disregard of human rights [or] safety" means "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or

property." *Peterson*, 290 So. 3d at 110. The term "willful" as used in section 768.28(9)(a)'s phrase "wanton and willful disregard of human rights [or] safety" is defined as "intentionally, knowingly, and purposely." *Id.* "Generally, courts are reluctant to strip officers of their immunity under section 768.28(9)(a) of the Florida Statutes. As such, a threadbare recital that a defendant 'acted maliciously and in bad faith is conclusory' and insufficient." *Eiras*, 239 F. Supp. 3d at 1344 (quoting *Brivik v. Law*, 545 F. App'x 804, 807 (11th Cir. 2013)).

## 1.    *Defendant Herman Sapp*

In Count Three, Hooks specifically concedes that Defendants were "acting within the scope of their authority." (Doc. 67 at 16). Regardless, Hooks's other allegations indicate that Sapp was acting within the scope of his employment. To overcome statutory immunity, therefore, Hooks had to allege that Sapp acted with bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Hooks alleges only that he asked Sapp to move him to another housing unit because Hooks believed that Thomas would harm him. (Doc. 67 at 6). In response, Sapp instructed Hooks to "write the housing Sergeant an inmate request to move." (*Id.*). Hooks did not allege that Sapp acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Rather, Hooks alleged that Sapp acted with "lack of concern" and that he

brushed Hooks off. (*Id.*). Lack of concern in one instance is not bad faith, maliciousness, or wanton disregard of safety.

One Florida court held that prison guards acted in a manner exhibiting willful disregard of an inmate's safety when:

(1) the inmate-plaintiff repeatedly pleaded with the prison guards to protect him from another inmate;

(2) at least one guard was present when the inmate attacked the plaintiff; and

(3) the prison guards had prior knowledge or reason to anticipate danger to the plaintiff.

*See Harris v. Monds*, 696 So. 2d 446, 447 (Fla. 4th DCA 1997).

In contrast, in Hooks's case, he made only one request of Sapp to move him to another housing unit, Sapp was not present when Thomas attacked Hooks, and—other than Hooks's claim that Thomas posed a danger to him—Hooks has not alleged that Sapp had knowledge or reason to anticipate danger to Hooks from Thomas. Indeed, Thomas attacked Hooks less than two hours after Hooks requested that Sapp move Hooks to a different housing unit. (Doc. 67 at 6). That left Sapp little time to arrange for Hooks to be moved or to observe Hooks's interactions with Thomas. Furthermore, Hooks does not allege even complete indifference on Sapp's part. Rather, Hooks concedes that Sapp informed him of the proper procedure to arrange a move to another housing unit: contact the individual in charge of housing

and request a move. (*Id.* at 6, ¶ 6). Allegations of such conduct do not indicate bad faith or wantonness.

Hooks did not allege that Sapp acted in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. For this reason, with respect to Count Three, in his individual capacity, Sapp is entitled to immunity pursuant to Fla. Stat. § 768.28(9)(a).

### 2.   *Defendant Markevar Hunter*

As to Hunter, Hooks alleges that Hunter arrived at his cell *after* Thomas had already stabbed him. (Doc. 67 at 8). Hooks does not allege that he asked Hunter to move him to another housing unit or that he warned Hunter that Thomas would attack Hooks.  Rather, Hooks alleges that Hunter wrote an incident report and stated in that report that Hooks "offered no response" to Hunter's questions. (*Id.*). Hooks explains that he offered no response because he was "in shock from the stabbing, blooding [sic], in extreme pain, fearing further attack, and afraid of dying." (*Id.*). Hooks further alleges that Hunter demonstrated "wanton disregard for Mr. Hooks' life and deliberate indifference toward Mr. Hooks' needs," but he does not explain how Hunter did so. (*Id.* at 8, ¶ 14).

Hooks's allegation that Hunter acted with wanton disregard for Hooks's life is a conclusory assertion for which Hooks provides no factual support. Conclusory assertions of elements are insufficient to state a claim. *See Ashcroft*, 556 U.S. at 678.

Hooks does not allege that Hunter had reason to know that Thomas would attack Hooks, so he clearly is not alleging wantonness with respect to any failure by Hunter to prevent the attack. Hooks's allegation that Hunter (accurately) wrote in an incident report that Hooks did not respond to Hunter's investigation does not rise to the level of bad faith or wantonness. In any event, it is not clear how Hunter writing a report—even if it were an inaccurate report—caused an injury in fact to Hooks. Simply writing a report does not demonstrate a wanton disregard for Hooks's life. At best, one might argue that Hunter should have been obtaining medical care for Hooks as opposed to creating a report of the incident.[3] But Hooks never makes that allegation and does not describe his injuries beyond noting that he was bleeding and his injuries were "severe." Regardless, Hooks concedes that an unnamed person—perhaps Hunter—escorted him to "Medical" for treatment. (Doc. 67 at 8, ¶ 16).

Hooks did not sufficiently allege that Hunter acted in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. For this reason, with respect to Count Three, in his individual capacity, Hunter is entitled to immunity pursuant to Fla. Stat. § 768.28(9)(a).

---

[3] Although Hooks faults Hunter for promptly attempting to create an incident report, Hooks also complains that a deceased former Defendant failed to create an incident report. (Doc. 67 at 8, ¶ 13).

**B.    Count Three: Hooks's Negligence Claims against Defendants in their Official Capacities**

Defendants next argue that, to the extent Plaintiff is suing Defendants in their official capacities, Section 768.28(9)(a), Florida Statutes, does not authorize official capacity suits against individuals who are not "agency heads." (Doc. 70 at 6).

Section 768.28(9)(a), Florida Statutes in pertinent part reads:

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers <u>shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee</u>, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a) (emphasis added). Under this provision, in "the absence of bad faith or malicious purpose, Florida law provides an exclusive remedy against the relevant governmental entity for any injury caused by an officer acting in the course of his employment." *Prieto v. Malgor*, 361 F.3d 1313, 1316 n.3 (11th Cir. 2004) (per curiam); *see McGhee v. Volusia Cty.*, 679 So. 2d 729, 733 (Fla. 1996); *Ortega v. Schramm*, 922 F.2d 684, 693 (11th Cir. 1991); *Burks v. Beary*, 713 F. Supp. 2d 1350, 1361 (M.D. Fla. 2010).

As discussed above, Hooks did not sufficiently allege that Sapp and Hunter acted outside the scope of their employment, in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or

property. Accordingly, under Fla. Stat. § 768.28(9)(a), he may not sue Sapp and Hunter in their official capacities. Rather, he can proceed only against the FDC or the head of that agency. For this reason, the District Court also should dismiss Count Three to the extent it alleges that Sapp and Hunter are liable in their official capacities.

## C.    Eleventh Amendment Immunity

Finally, Defendants argue that, because of the Eleventh Amendment to the United States Constitution, the District Court should dismiss any claim against them in their official capacities to the extent it seeks damages. (Doc. 70 at 6).

The Eleventh Amendment is generally a bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacity unless the state has consented to suit, congress has abrogated the immunity, or the plaintiff proceeds under *Ex parte Young*. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Seminole Tribe of Fla. v. State of Fla.*, 11 F.3d 1016, 1021 (11th Cir. 1994) (citing *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)) ("[T]he states' immunity is not absolute. More specifically, states are not immune if the circumstances indicate consent, abrogation or the fiction of *Ex parte Young*. If none of these three exceptions applies, however, the Eleventh Amendment serves as a jurisdictional bar to the suit.").

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S 658, 690 n.55 (1978)); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Thus, in a section 1983 action "a claim against a defendant in his official capacity is the same as a claim against his employer." *Christman v. Saint Lucie Cty., Fla.*, 509 F. App'x 878, 879 (11th Cir. 2013) (citing *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 n.2 (1997)); *Faulkner v. Monroe Cty. Sheriff's Dep't.*, 523 F. App'x 696, 701 (11th Cir. 2013) ("A suit against a person in their official capacity is be treated as a suit against the entity.").

In this case, a suit against Defendants—who are employees of the FDC—in their official capacities is a suit against the FDC. The FDC, a state agency, is "clearly the equivalent of the State of Florida for the Eleventh Amendment purposes." *See Walden v. Fla. Dep't of Corr.*, 975 F. Supp. 1330, 1331 (N.D. Fla. 1996). Thus, the FDC is immune from suit for monetary damages unless the state immunity was waived by the State of Florida or abrogated by congress. *See Schloper v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990). The State of Florida has not waived immunity and Congress has not expressly abrogated state immunity in section 1983 cases. *See Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in Section 1983

damage suits, [and] Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages.") (internal citation and quotations omitted). Thus, the Eleventh Amendment is a bar to Plaintiff's claim for monetary damages against these Defendants in their official capacity.

### V. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Defendants' motion to dismiss (Doc. 70, 73) be **GRANTED.**

At Panama City, Florida, this <u>14th</u> day of August, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**